IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JUAN SYLVESTER BARNES          *

   Plaintiff                  *

      v                       *     Civil Action No. DKC-14-2904

DR. OTTEY, *et al.*            *

   Defendants                 *
                                 ***

## MEMORANDUM OPINION

Defendants Dr. Collin Ottey, Dr. Ava Joubert, Peggy Mahler, Beverly McLaughlin, and Wexford Health Sources, Inc.,[1] filed a Motion to Dismiss the above-captioned complaint as amended. ECF No. 9. Following Defendants' motion and this court's denial of his request to engage in discovery, Plaintiff filed a pleading which was docketed as a second amended complaint (ECF No. 19) which Defendants move to strike (ECF No. 20). Because Plaintiff's pleading is more appropriately construed as an Opposition Response, Defendants Motion to Strike shall be denied and it will be considered in the context of the Motion to Dismiss. The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, Defendants' Motion to Dismiss shall be granted and the complaint will be dismissed.

### Background

Plaintiff Juan Barnes ("Barnes"), a prisoner confined to North Branch Correctional Institution ("NBCI"), alleges he is being denied proper medical treatment for chronic pain in his hip and leg. ECF Nos. 1 and 3. Barnes broke his right femur which was repaired surgically with a metal rod in 2008. ECF No. 3 at p. 3. He claims the surgery to repair the fracture was complicated and he was told he was lucky it did not have to be amputated. *Id*. Following the

---

[1] The Clerk shall correct the docket to reflect the full and proper spelling of Defendants' names.

surgery, Barnes was prescribed Percocet for pain management and he claims that his doctors told him the pain would worsen over time. *Id*.

Barnes states he was first seen on February 2, 2013, by Dr. Joubert, who ordered x-rays but denied a prescription for pain medication. Barnes alleges that Joubert never informed him of the x-ray results even though she was informed on April 9, 2013, that Barnes has "degenerative changes and reduced joint space in his hip." ECF No. 3 at p. 4. Barnes characterizes this as a serious bone disease that will eventually require hip replacement surgery and is consistent with his complaints of pain. *Id*. Barnes claims the x-ray results were deliberately withheld from him so he would not make a request to be seen by an orthopedic surgeon. ECF No. 1 at p. 3.

Barnes states that in May of 2014, he was provided a prescription for Ultram 50 mg. He claims the prescription was taken from him by Peggy Mahler on August 9, 2014, after a two week period. Beverly McLaughlin, then erroneously told Barnes that the prescription was not being provided due to the pharmacy's policy. Barnes claims this information was false. He further alleges that McLaughlin prescribed "muscle pills" which were ineffective in treating his pain because his pain is "bone pain" not "muscle pain." ECF No. 3 at p. 5.

Barnes claims he is a chronic care patient with pain levels that significantly affect his ability to engage in daily activities, making his assignment to a top bunk and an upper level tier inappropriate because it requires him to climb stairs. ECF No. 3 at p. 6. Barnes asserts that since being in prison he has been provided with "headache medications" to treat his hip pain as well as muscle relaxers, meloxicam, Motrin, Tylenol, Ibuprofen, and Naproxen. ECF No. 1 at p. 3. In addition, Barnes admits receiving Baclofen and Elavil, which he states are "psychiatric disorder medications they claim works for pain," but does not relieve his pain. *Id*. at p. 4. Barnes claims it is deliberate indifference to a serious medical need to refuse to treat chronic pain and to limiting treatment to methods so ineffective they amount to no treatment. *Id*.

As relief, Barnes seeks an Order from this court requiring Defendants to "stop giving inadequate medication" and to send him to a hospital so it can be determined if the metal rod should be removed from his leg. ECF 1 at p. 4. Barnes also seeks monetary damages in the event this matter proceeds to trial or Defendants do not comply with an Order granting injunctive relief. *Id.*

## Standard of Review

### Motion to Dismiss

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the Plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). The Supreme Court recently articulated the proper framework for analysis:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the … claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.*; *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the assumption that all the allegations in the complaint are true (even if doubtful in fact), *see, e.g., Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, n. 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327(1989) ("rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnotes omitted).

This standard does not require Defendants to establish "beyond doubt" that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 1968-69.

3

Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 1969. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

<u>Eighth Amendment Claim</u>

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that

4

risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) quoting *Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

**Analysis**

Defendants assert that, taken as true, Barnes' claims state at most one for medical malpractice which cannot proceed because he has failed to comply with the provisions of the Healthcare Malpractice Act. ECF No. 9-1. With respect to Barnes' Eighth Amendment claim, Defendants state that the failure to provide Barnes with the health care of his choice does not state a claim of deliberate indifference especially in light of Barnes' admission he was seen and treated by health care providers. *Id*. at p. 4. Defendants further claim that Barnes' Complaint is premised on his disagreement with the medical care provided which does not amount to treatment that shocks the conscience. *Id*. at p. 6. Specifically, Barnes disagrees with the choice of pain medication provided and the choice of specialists to whom he was referred.

In a pleading which was docketed as a supplemental complaint, Plaintiff states he continues to be denied pain management. ECF No. 19 at pp. 1 – 2. He further argues that the metal rod in his leg is "way past due to be removed" and several requests he has made to be seen by an orthopedic surgeon to be evaluated for its removal have been denied. *Id*. at p. 3. Barnes argues that Defendants are seeking dismissal of the instant case despite the enormous amount of

pain he is suffering and the grounds upon which they seek dismissal are frivolous. *Id*. at pp. 3 – 4.

A prisoner's right to medical treatment consonant with the Eighth Amendment's prohibition against cruel and unusual punishment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977) (emphasis added in original). Barnes' claim is not that he is denied all care, but denied the specific medications he believes are necessitated by his condition and the surgery he believes is necessary for his leg. To the extent Barnes has not been informed of test results or educated about the proper approach for chronic pain treatment, "an inadvertent failure to provide adequate medical care does not amount to deliberate indifference." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). Barnes' disagreement with the medical decisions made regarding pain medication and referrals to outside specialist are simply "[d]isagreements between an inmate and a physician over the inmate's proper medical care [which] do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985), citing *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3rd Cir.1970). There are no exceptional circumstances present in this case inasmuch as it is apparent that Barnes is in fact receiving care as a chronic care patient and is receiving pain medication.[2] Thus, Barnes' claims as to Defendants Dr. Collin Ottey, Dr. Ava Joubert, Peggy Mahler, and Beverly McLaughlin must be dismissed for failure to state a claim.

Barnes' claim as to Wexford Health Sources, Inc., must also be dismissed as it is a claim based on *respondeat superior* which does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of

---

[2] The court notes that while the facts alleged in this case are not sufficient to state a constitutional claim, a prolonged refusal to address the underlying cause of chronic pain may in fact state a claim in the future.

supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984).  Supervisory liability under § 1983 must be supported with evidence that:  (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).  Where, as here, the medical care providers have not engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Barnes, their employer cannot be found liable as a supervisory official.

      A separate Order follows.


Date:   June 5, 2015                                    /s/
                                            DEBORAH K. CHASANOW
                                            United States District Judge